IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| IRINA WHITTAKER | : | |
| | : | |
| v. | : | Civil Action No. DKC 14-2483 |
| | : | |
| DAVID'S BEAUTIFUL PEOPLE, INC., et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment case is a motion for summary judgment filed by Defendants David's Beautiful People, Inc. and David Cohen (collectively, the "Defendants"). (ECF No. 31). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion will be granted in part and denied in part.

**I.    Background**

    **A.    Factual Background**

Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff Irina Whittaker ("Plaintiff"). Additional facts will be discussed in the following section. Defendant David's Beautiful People (the "salon") is a salon in Rockville, Maryland, owned by Defendant David Cohen, a white man.

Plaintiff, a white woman of Ukrainian descent, began working at the salon in December 2012, when Defendants took on clients and employees of a nearby salon at which Plaintiff previously worked. Plaintiff was paid a commission based on the number and type of client services she performed. (ECF Nos. 31-1, at 15; 37-1 ¶ 30). At the beginning of her employment at the salon, Plaintiff became friends with Mahshid Hosseini, a female co-worker of Iranian descent. (ECF Nos. 31-2, at 6; 31-3, at 8; 31-5, at 6). A few months later, this relationship soured, and, Plaintiff alleges, Ms. Hosseini subjected her to constant "vile and vicious insults and abuse" from February to June 2013. (ECF No. 37-1 ¶ 9). According to Plaintiff, Ms. Hosseini called her, among other things, a "Russian whore," a "golddigger," and a "bitch." (*Id.*). Ms. Hosseini also sent two text messages to Plaintiff, one which read, "You are nothing but a [f]ucking Russian whore go[l]d digger[]!! So disgusted by you!!" (*Id.* at 12).[1] The other read, "You really deserve a spit to ur face!" (*Id.* at 11). Plaintiff informed Mr. Cohen about Ms. Hosseini's actions, showed him the text messages, and told him that she was having a "hard time" working with Ms. Hosseini. (*See* ECF No. 37-2, at 10). Mr. Cohen told both Plaintiff and Ms. Hosseini to

---

[1] In her deposition, Ms. Hosseini confirmed that her phone autocorrected her text messages to say "ducking Russian whore good diggers," but that the quoted language above, as edited, is what she intended to write. (ECF No. 37-4, at 18).

try to stay away from each other and focus on their work. (*Id.* at 12).

On June 19, 2013, Plaintiff and Ms. Hosseini were involved in a physical altercation at the salon. The parties dispute the details of the event, but agree that Plaintiff and Ms. Hosseini were walking past each other when they bumped into each other. (*See* ECF Nos. 31-3, at 19-20; 37-2, at 12-13). This contact escalated into a more serious and violent physical confrontation. Following the altercation, Plaintiff called the police. (ECF No. 31-3, at 23). Officers from the Montgomery County Police Department interviewed people at the scene and informed Plaintiff and Ms. Hosseini how to file charges if they so wished. (ECF No. 41-3, at 4). Mr. Cohen, after speaking with Ms. Hosseini, a client who witnessed the altercation, and a police officer, concluded that Plaintiff was responsible for the altercation and sent her a letter the following day terminating her employment at the salon. (ECF No. 31-1, at 17-18).

### B. Procedural History

On July 30, 2013, Plaintiff filed a complaint with the Montgomery County Office of Human Rights ("OHR"). (*See* ECF No. 31-17, at 2). The OHR terminated its investigation because Plaintiff failed to rebut Defendants' "verified non-discriminatory reason and documentation for [their] actions." (*Id.* at 7). Plaintiff then received a right to sue letter from

the U.S. Equal Employment Opportunity Commission ("EEOC").  (ECF No. 31-18).

On August 5, 2014, Plaintiff timely commenced this action. (ECF No. 1).  Plaintiff's complaint includes the following counts: harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); retaliation in violation of Title VII (Count II); discrimination in violation of the Montgomery County Code (Count III); wrongful discharge (Count IV); negligent retention and supervision (Counts V and VI); assault (Count VII); battery (Count VIII); intentional infliction of emotional distress (Count IX); aiding and abetting (Count X); failure to pay minimum wage in violation of the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL") (Counts XI and XII).  Defendants answered (ECF No. 7), and the parties held a settlement conference in front of Magistrate Judge Charles B. Day on March 27, 2015.  On June 15, Defendants filed the pending motion for summary judgment.  (ECF No. 31).  Plaintiff responded in opposition (ECF No. 37), and Defendants replied (ECF No. 41).

## II.  Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to

judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court of the United States explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *See Liberty Lobby*, 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

### A.   Hostile Work Environment (Counts I and III)[2]

Plaintiff asserts claims of discrimination based on unlawful harassment in violation of Title VII.   Title VII prohibits discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2525 (2013).   Plaintiff alleges that she was subjected to a hostile work environment on the basis of her gender, ethnicity, race, and national origin while

---

[2] Count III alleges discrimination under the Montgomery County Code, to which a private right of action is given by Md. Code, State Gov't § 20-1202.   Maryland courts construe such claims similarly to those made under Title VII.   *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 504 (2007) ("Considering the mimicry of state and local laws to Title VII, it is appropriate to consider federal precedents when interpreting state and local laws."), *see also Finkle v. Howard Cnty., Md.*, 12 F.Supp.3d 780, 784 (D.Md. 2014).   Accordingly, Counts I and III will be analyzed together.

working at the salon.   (ECF No. 1 ¶¶ 22-37).   According to Plaintiff, "[d]espite actual and constructive knowledge of [Ms. Hosseini's] harassment, discrimination, and hostile work environment and despite Plaintiff's complaints, Defendants failed to take and refused to take any meaningful action to remedy, stop, prevent, or otherwise adequately address such harassment, discrimination, and hostile work environment." (*Id.* ¶ 32).[3]

"To establish a *prima facie* case of hostile work environment, a plaintiff must prove: (1) that she was harassed because of her [protected status]; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." *Moret v. Green*, 494 F.Supp.2d 329, 341 (D.Md. 2007) (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241 (4th Cir. 2000)).   To impute liability to an employer for the harassment

---

[3] Counts I and III of the complaint nominally assert claims for both discrimination and hostile work environment, but Plaintiff only puts forth facts reflecting a hostile work environment claim.   Moreover, Plaintiff does not respond to Defendant's argument for summary judgment on her discrimination claim in her opposition, thereby abandoning any claim for discrimination. *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010) (citing *Mentch v. Eastern Savings Bank, FSB*, 949 F.Supp. 1236, 1247 (D.Md. 1997)). Accordingly, to the extent that Counts I and III assert claims of unlawful discrimination beyond a claim of hostile work environment, Defendants will be granted summary judgment.

of a co-worker (as opposed to a supervisor), a plaintiff must show that the employer was negligent in "failing, after actual or constructive knowledge, to take prompt and adequate action to stop it." *Mikels v. City of Durham, N.C.*, 183 F.3d 323, 332 (4th Cir. 1999) (citing *Burlington Indus., Inc. v. Ellerth*, 525 U.S. 742, 757-58 (1998)).

Defendants argue that Plaintiff has failed to show that the alleged hostile conduct was based on Plaintiff's gender, ethnicity, race, or national origin. Defendants also contend that the conduct was not "sufficiently severe or pervasive so as to alter the conditions of [Plaintiff's] employment." (ECF No. 31-1, at 27). Finally, Defendants assert that they are not liable for Ms. Hosseini's conduct because the offending conduct is not imputable to them.[4] Plaintiff counters that "the harassment she experienced was unwelcome and severe and/or pervasive (to include regular insults and a physical beating), that [] [D]efendants knew about the harassment (having been advised on numerous occasions), and that [] [D]efendants failed to take any sufficient and reasonable action to stop or even abate the harassment." (ECF No. 37, at 11).

---

[4] Because Plaintiff has failed to meet her burden establishing the severity or pervasiveness of the conduct, it is unnecessary to consider if liability should be imputed to Defendants.

8

### 1.    Harassment Based on a Protected Trait

Defendants' conclusory argument that "[t]he two text messages, by themselves, do not establish harassment of Plaintiff based on a protected characteristic" is not persuasive.  To establish that Ms. Hosseini's conduct was based on a protected trait, Plaintiff must show that she was targeted *because of* such trait.  *See First Union*, 202 F.3d at 242–43.  Ms. Hosseini sent a text message calling Plaintiff a "[f]ucking Russian whore."  (ECF No. 37-1, at 12).  Plaintiff also testified that Ms. Hosseini called her a "Russian bitch" at the salon.  (ECF No. 31-3, at 8).  Such derogatory slurs that explicitly reference Plaintiff's national origin are evidence of animus based on national origin.[5]  Defendants make no argument and cite to no case law suggesting otherwise.  Defendants' assertion that Ms. Hosseini was an "'equal opportunity' bad co-worker" because she bullied other co-workers does not negate the direct evidence that shows Ms. Hosseini's actions towards Plaintiff were motivated by a prohibited animus.  (ECF No. 31-1, at 27 n.11).[6]  Equally unpersuasive is Defendants' contention

---

[5] Although Plaintiff is of Ukrainian descent, she was born in the U.S.S.R., "lived for an extended period of time in the Russian Federation," and speaks English with a Russian accent. (ECF No. 1 ¶ 13).

[6] It is also notable that another co-worker testified that Ms. Hosseini made a comment about Brazilians being prostitutes. (ECF No. 31-6, at 5).

that "it makes no sense that [Ms.] Hosseini originally would be friends with Plaintiff if she held such animus toward any protected group to which Plaintiff belonged." (ECF No. 31-1, at 27 n.11). The case Defendants cite, *Rodriguez v. Gutierrez*, No. CCB-06-1045, 2006 WL 3914783 (D.Md. Dec. 29, 2006), is inapposite. Defendants correctly note that the court in *Rodriguez* dismissed the plaintiff's hostile work environment claim because there was "no indication from plaintiff's allegations that her co-workers held any animosity toward [the plaintiff] because of her race or national origin." *Id.* at *4. The court noted, however, that the plaintiff's supervisor made potentially hostile comments that were motivated by race and national origin when she expressed a dislike for Mexicans and Mexico, but "[a]ny complaint based on those comments" was time-barred. *Id.* Here, Plaintiff provided direct evidence of animosity based on national origin in the form of the text message calling her a "[f]ucking Russian whore," and her claims are not time-barred. Although it is possible that Ms. Hosseini's hostility towards Plaintiff was caused by some other non-protected personal animus, such a determination is not appropriate at the summary judgment stage in light of Plaintiff's direct evidence of prohibited animus. *See Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 209 (4th Cir. 2014) ("We recognize that some of the . . . individuals' motives are

disputed, but such factual details and credibility determinations are [] not issues to be resolved at the summary judgment stage.").

### 2. Severe or Pervasive Conduct

Although Title VII "surely prohibits an employment atmosphere that is permeated with discriminatory intimidation, ridicule, and insult, it is equally clear that Title VII does not establish a general civility code for the American workplace." *E.E.O.C. v. Sunbelt Rentals*, 521 F.3d 306, 315 (4th Cir. 2008) (citations and internal quotation marks omitted). In determining whether the offending conduct was sufficiently severe or pervasive, the court must consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *First Union*, 202 F.3d at 242; *see also Sunbelt Rentals*, 521 F.3d at 315. Plaintiff must show not only that she subjectively believed that her workplace environment was hostile, but also that an objective reasonable person would have found it to be hostile. *Sunbelt Rentals*, 521 F.3d at 315. Furthermore, "[t]he behavior need not be both severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is." *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F.Supp.3d 398, 413 (D.Md.

11

2015) (quoting *Reed v. Airtran Airways*, 531 F.Supp.2d 660, 669
n.15 (D.Md. 2008) (citations omitted)).

Plaintiffs in the United States Court of Appeals for the
Fourth Circuit:

> must clear a high bar in order to satisfy
> the severe or pervasive test.   Workplaces
> are not always harmonious locales, and even
> incidents that would objectively give rise
> to bruised or wounded feelings will not on
> that account satisfy the severe or pervasive
> standard. Some rolling with the punches is a
> fact of workplace life.   Thus, complaints
> premised on nothing more than "rude
> treatment by [coworkers]," *Baqir v.
> Principi,* 434 F.3d 733, 747 (4th Cir. 2006),
> "callous behavior by [one's] superiors,"
> *Bass,* 324 F.3d at 765, or "a routine
> difference of opinion and personality
> conflict with [one's] supervisor," *Hawkins
> v. PepsiCo, Inc.,* 203 F.3d 274, 276 (4th Cir.
> 2000), are not actionable under Title VII.

*Sunbelt Rentals*, 521 F.3d at 315-16.   "'[S]imple teasing,
offhand comments, . . . isolated incidents (unless extremely
serious)[,] . . . [and] mere unpleasantness [are] not sufficient
to qualify harassment as severe and pervasive." *Id.* (citing
*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998);
*Hartsell v. Duplex Prods.*, 123 F.3d 766, 773 (4th Cir. 1997)).
"'Summary judgment should not be granted unless no fact finder
reasonably could conclude that the conduct was so severe or
pervasive as to create an abusive [] environment.'"   *Silver*

*Spring Fire Dept.*, 86 F.Supp.3d at 412 (quoting *Williams v. Poretsky Mgmt., Inc.*, 955 F.Supp. 490, 497 (D.Md. 1996)).

Here, Plaintiff has not shown that Ms. Hosseini's alleged conduct was sufficiently severe or pervasive to create a hostile work environment. The text messages Plaintiff received were the most severe incidents, but were isolated. The fact that the texts were sent by Plaintiff's co-worker rather than a supervisor lessens their threatening character and severity. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278, 280 (4th Cir. 2015) (noting that "'a supervisor's power and authority invests his or her harassing conduct with a particular threatening character'" (quoting *Ellerth*, 524 U.S. at 763)). The other conduct that Plaintiff contends created a hostile work environment may be more pervasive, but it is far less severe — nothing more than a co-worker's rude, callous behavior. According to Plaintiff, Ms. Hosseini "would not speak to" Plaintiff, called her names, and insulted her. (ECF No. 31-3, at 8). This is not enough to show that Plaintiff was subjected to an objectively severe or pervasive hostile work environment. In a similar case, Judge Blake noted that,

> while the Fourth Circuit has not limited viable hostile work environment claims to the "precise behaviors . . . alleged to have occurred" in previous cases, *Walker*, 775 F.3d at 209, the conduct alleged here does not approach the severity of that described in recent Fourth Circuit cases allowing

13

> hostile work environment claims to survive
> summary judgment. *See, e.g.*, *id.* at 205
> (the plaintiff's coworker made vulgar "sex-
> based comments to her and other co-workers
> on a near-daily basis"); *Okoli v. City of
> Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)
> (the plaintiff's supervisor forcibly kissed
> her, sexually propositioned her, and
> repeatedly asked her sexually charged
> questions); *Hoyle v. Freightliner, LLC*, 650
> F.3d 321, 326-27 (4th Cir. 2011) (the
> plaintiffs' coworkers placed sexually
> provocative photographs throughout the
> workplace, and affixed a tampon to her key
> ring).

*Testerman v. Procter & Gamble Mfg. Co.*, No. CCB-13-3048, 2015 WL 5719657, at *6 (D.Md. Sept. 29, 2015); *see McLaurin v. Verizon Md., Inc.*, No. JKB-14-4053, 2015 WL 5081622, at *4 (D.Md. Aug. 26, 2015) (holding that the plaintiff did not allege an actionable hostile work environment claim despite allegations that one co-worker called the plaintiff a "bitch," another co-worker "urinated in front of her," and a supervisor "cursed" at her); *Khoury v. Meserve*, 268 F.Supp.2d 600, 614-14 (D.Md. 2003). The district court in *Khoury* granted the defendant's motion for summary judgment on a hostile work environment claim even though the plaintiff "describe[d] treatment that was often disrespectful, frustrating, critical, and unpleasant." *Khoury*, 268 F.Supp.2d at 614. The plaintiff's allegations that her supervisor "yelled at [her], told her she was incompetent, pushed her down in her chair, and blocked the door to prevent

[her] from leaving while he continued to yell at her" were not sufficient to establish a hostile work environment claim. *Id.*

Plaintiff's attempt to show that courts have denied summary judgment in the face of less severe or pervasive conduct is unavailing. (*See* ECF No. 37, at 12). The conduct in the cases Plaintiff cites was more severe and pervasive than Ms. Hosseini's conduct here. In *Boyer-Liberto*, the hostile work environment was perpetuated by the plaintiff's supervisor, which created a more threatening and severe context than if the same actions were done by a co-worker. 786 F.3d at 278, 280. Moreover, the conduct was more severe because the plaintiff's supervisor, on multiple occasions, "berated [the plaintiff's] job performance before threatening 'to get [her]' and 'make [her] sorry,' and then calling her a 'damn porch monkey.'" *Id.* at 279. In *Whitten v. Fred's, Inc.*, 601 F.3d 231 (4th Cir. 2010), *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S.Ct. 2434 (2013), the Fourth Circuit noted that "[w]hile two days of verbal abuse of the type at issue here, could not, in and of itself, support a hostile work environment claim, that conduct combined with the physical assaults every day after [the plaintiff] began working at the store is sufficiently severe" to survive summary judgment. The plaintiff's supervisor "pressed his genitals against" the plaintiff on several occasions. *Id.* at 236; *see also Silver Spring Fire Dep't*, 86 F.Supp.3d at 412-

13 (denying summary judgment where supervisor subjected the plaintiff to physical sexual contact on multiple occasions). In *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010), the Fourth Circuit reversed the district court's summary judgment ruling because "[s]exist comments were pervasive . . . and were frequently made to" the plaintiff. The record was replete with multiple specific, severe derogatory comments that significantly impacted the plaintiff's performance. *Id.* at 329-33. The Fourth Circuit also recently reversed a district court's grant of summary judgment in *Walker*, 775 F.3d 202. The conduct in *Walker* was, however, much more severe and pervasive than Ms. Hosseini's conduct here. Multiple co-workers made crude sexual comments and explicit gestures toward the plaintiff and others several times a week for over a year. *Id.* at 205. Ms. Hosseini's conduct, when viewed in its totality, simply does not rise to the same level of severe or pervasive hostility. No reasonable juror could conclude that the conduct is sufficient to establish an objectively hostile work environment. Accordingly, Defendants' motion for summary judgment will be granted as to Counts I and III.

**B.   Retaliation (Count II)**

Title VII makes it unlawful for "an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made an unlawful practice by this

16

subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff must produce either direct evidence of retaliation or make use of the test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Because she does not put forth direct evidence, Plaintiff must employ the *McDonnell Douglas* approach. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Under this approach, Plaintiff must establish three elements to establish a *prima facie* case: (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) the protected activity was causally connected to the adverse action. *Sewell v. Strayer Univ.*, 956 F.Supp.2d 658, 671-72 (D.Md. 2013) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)). If Plaintiff establishes a *prima facie* case, Defendant must provide a legitimate, non-retaliatory explanation for the adverse action. The burden then shifts back to Plaintiff to show that Defendants' proffered reason is pretextual.

Plaintiff alleges that Defendants terminated her employment after she "engaged in a protected activity by complaining of, protesting, and opposing harassment and discrimination, and demanding an investigation of the same." (ECF No. 1 ¶¶ 39-42). Defendants counter that Plaintiff has not established a *prima*

17

*facie* case of retaliation because "simply voic[ing] a general complaint about working with [Ms.] Hosseini without any indication that [Ms.] Hosseini's behavior was based upon or related to Plaintiff being a member of a protected class" is not a protected activity. (ECF No. 31-1, at 30). Defendants also argue that Plaintiff has failed to show a causal connection between any protected activity and her termination. Finally, Defendants argue that, even if Plaintiff could establish a *prima facie* case, Defendants terminated her employment because of the physical altercation — a legitimate, non-retaliatory reason — and Plaintiff has not shown that this reason was a pretext for retaliation.

### 1.  Protected Activity

Plaintiff asserts that she was "engaged in a protected activity by complaining of, protesting, and opposing harassment and discrimination, and demanding an investigation of the same." (ECF No. 1 ¶ 39). Defendants counter that she only complained to Mr. Cohen that she was having difficulty working with Ms. Hosseini, but said nothing about alleged harassment because of race, ethnicity, national origin, or gender. (ECF No. 31-1, at 29). In her deposition, Plaintiff said, "I told [Mr. Cohen] that I don't know why, but . . . [Ms. Hosseini] is treating me badly. And she's calling me names and she's calling me names in front of everybody." (ECF No. 31-3, at 15). Plaintiff also

testified that she showed Mr. Cohen the text messages Ms. Hosseini sent, and complained to Mr. Cohen following the altercation on June 19, 2013.  (*Id.* at 15-17).

Construing the facts in the light most favorable to Plaintiff, the record indicates that she engaged in a protected activity by complaining to Mr. Cohen about Ms. Hosseini's conduct, particularly showing him the text messages.  Protesting unfair treatment and other workplace conduct that is not prohibited by Title VII is not protected activity.  *See Harris v. Md. House of Correction*, 209 F.Supp.2d 565, 570 (D.Md. 2002).  Here, however, Plaintiff has testified that she showed Mr. Cohen the text message calling her a "Russian whore."  The Fourth Circuit has held "that an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct."  *Burgess v. Bowen*, 466 F.App'x 272, 282 (4th Cir. 2012) (citing, *inter alia*, EEOC Compliance Manual § 8-II.B.2 (2006) ("[A] protest is protected opposition if the complaint would reasonably have been interpreted as opposition to employment discrimination.")); *see also Strothers v. City of Laurel, Md.*, No. PWG-14-3594, 2015 WL 4578051, at *10 (D.Md. July 27, 2015) (denying a motion to dismiss a retaliation claim because the plaintiff complained about "harassment," which was sufficient to

put employer on notice that she was complaining about discrimination).

Moreover, the Fourth Circuit has expanded the scope of what constitutes a protected activity. *See, e.g., DeMasters v. Carilion Clinic*, 796 F.3d 409, 416-21 (4th Cir. 2015); *Boyer-Liberto*, 786 F.3d at 285-88. As Judge Grimm noted recently, this "broad[er] reading of Title VII extends its protection to an employee who reasonably fears that she is being subjected to unfavorable treatment based on her [protected status], even where, as here, that treatment does not rise to the level of creating a hostile work environment." *Young*, 108 F.Supp.3d at 316. The court in *Young* found that the plaintiff's protest was a protected activity even though she did not plead a plausible hostile work environment claim. *Id.* at 316-17. Her protests were a protected activity because she had a reasonable belief that the workplace activity was a violation of Title VII and clearly indicated that she was complaining about gender discrimination rather than general workplace grievances. *See id.* Similarly, here, Plaintiff has sufficiently shown that she engaged in a protected activity even if the underlying conduct about which she complained did not create (or had not yet created) a hostile work environment.

### 2.   Causal Connection

Defendants also argue that Plaintiff has not shown that her termination was causally related to her protected activity.   The Fourth Circuit has held that "a causal connection for purposes of demonstrating a *prima facie* case exists where the employer takes adverse employment against an employee shortly after learning of the protected activity."   *See Pepper v. Precision Valve Corp.*, 526 F.App'x 335, 337 (4th Cir. 2013) (quoting *Price*, 380 F.3d at 213) (internal quotation marks omitted).   Here, Plaintiff testified that she complained about the alleged hostile work environment on or about February 11, March 11, April 29, and June 19, 2013.   (ECF Nos. 31-3, at 15-17; 37, at 6).   Plaintiff was fired on June 20, 2013.   (ECF No. 31-1, at 17-18).   The Fourth Circuit has held that a ten-week period between a protected activity and adverse employment action "gives rise to a sufficient inference of causation."   *King v. Rumsfeld*, 328 F.3d 145, 151, 151 n.5 (4th Cir. 2003). Accordingly, Plaintiff has shown a causal relation sufficient to establish a *prima facie* case of retaliation.

### 3.   Defendants' Legitimate, Non-Retaliatory Reason for Termination

Defendants argue that, even if Plaintiff establishes a *prima facie* case of retaliation, Mr. Cohen fired her because he reasonably believed she was responsible for the physical

altercation, which amounts to a legitimate, non-retaliatory reason to terminate Plaintiff's employment. (ECF Nos. 31-1, at 31; 31-2, at 9). Through his affidavit and deposition, Mr. Cohen asserts that he determined Plaintiff was responsible for the altercation after speaking with a client who witnessed the incident and a police officer who conducted an investigation. (ECF Nos. 31-2, at 7-9; 31-10 ¶¶ 16-20). Mr. Cohen avers that he terminated Plaintiff's employment because "[a]s a small business owner, [he] cannot allow employees to start physical fights with their co-workers, in the salon, during business hours, and in front of clients." (ECF No. 31-10 ¶ 20). Under the *McDonnell Douglas* framework, once Defendants offer a legitimate, non-retaliatory reason for their actions, the burden shifts back to Plaintiff to show "by a preponderance of the evidence that the employer's reason is false and that [retaliation] was the real reason for the decision." *Fordyce v. Prince George's Cnty. Md.*, 43 F.Supp.3d 537, at 549-50 (D.Md. 2014) (citation and internal quotation marks omitted).

Plaintiff asserts that Defendants' reason is false or pretextual because Ms. Hosseini, not Plaintiff, was responsible for the altercation. (ECF No. 37, at 11). There is clearly a factual dispute as to the details surrounding the altercation, particularly regarding who initiated the contact. As Defendants note, however, this dispute is immaterial because Plaintiff has

failed to show that Mr. Cohen did not reasonably believe that Plaintiff was responsible for the altercation. *See Holland*, 487 F.3d at 214-15.   In *Holland*, the employer argued that the plaintiff was fired because his supervisor "believed" that the plaintiff made threats towards a co-worker. *Id.* at 214.   The plaintiff argued that this reason was pretextual because he did not actually make the threats.   The Fourth Circuit accepted his denials as true, but nonetheless upheld summary judgment because "nothing in the record support[ed] an inference that [the supervisor's] explanation was pretextual, or perhaps more on point, that [the supervisor] did not believe that [the plaintiff] had threatened [the co-worker] when he made the decision to fire him." *Id.* at 215; *see also Walker*, 775 F.3d at 211-12.  The same is true here.  Accordingly, Defendants' motion for summary judgment will be granted as to Count II because Plaintiff has failed to show Defendants' legitimate non-retaliatory reason for her termination was pretextual.

**C.  Tort Claims**

**1.  Wrongful Discharge (Count IV)**

Plaintiff alleges that her employment was terminated wrongfully "in violation of a clear mandate of public policy, including, without limitation, the prohibitions against harassment and discrimination contained in Montgomery County Code § 27-19, the Maryland Fair Employment Practices Act, and

Title VII." (ECF No. 1 ¶ 52). Defendants counter that Plaintiff is unable to assert a tortious wrongful discharge claim for a violation of public policy when a statutory remedy exists. (ECF No. 31-1, at 32-33).

It is well established under Maryland law that "at-will employment can be legally terminated at the pleasure of either party at any time." *Makovi v. Sherwin-Williams, Co.*, 316 Md. 603, 609 (1989) (citation and internal quotation marks omitted). The Court of Appeals of Maryland created a clear exception to this rule, however, in *Adler v. American Standard Corp.*, 291 Md. 31, 39-41 (1981), for abusive (or wrongful) discharge. The tort of abusive discharge occurs when an employer's discharge of an at-will employee "contravenes some clear mandate of public policy." *Id.* at 47. "A cause of action for wrongful discharge does not lie when the discharge was 'motivated by employment discrimination prohibited by Title VII and [Maryland statutory law].'" *Taylor v. Rite Aid Corp.*, 993 F.Supp.2d 551, 562 (D.Md. 2014) (quoting *Makovi*, 316 Md. at 626). Plaintiff's wrongful discharge claims are not viable because "they are otherwise remedied by statutes prohibiting workplace discrimination." *Id.* Although Plaintiff, in her opposition to Defendants' motion, argues that she was discharged for "reporting a crime to law enforcement" (ECF No. 37, at 17), her complaint alleges only that the discharge was in violation of public policy of Title

24

VII and its state and local analogs. (ECF No. 1 ¶ 52). Plaintiff cannot use her opposition to amend her complaint. *See, e.g.*, *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (unpublished table opinion). Even if she were able to do so, Plaintiff's new allegations attempt to argue that Defendants wrongfully discharged her in retaliation for a protected activity. Such a claim is also not viable due to the existence of statutory remedies. Accordingly, Defendants' motion for summary judgment will be granted as to Count IV.

### 2.   Negligent Retention and Supervision (Counts V and VI)

Plaintiff alleges that Defendants "breached the duty of care [they] owed Plaintiff by failing to exercise reasonable care in hiring, retaining, and supervising employees working at the [salon], including, without limitation, [Ms.] Hosseini." (ECF No. 1 ¶¶ 56, 60). Defendants argue that Plaintiff's negligent retention and supervision claims are preempted by federal and state antidiscrimination statutes because the claims are based on Plaintiff's discrimination, harassment, and retaliation claims. (*See* ECF No. 31-1, at 35-36). Plaintiff counters that the negligent retention and supervision claims are not necessarily preempted by the antidiscrimination statutes because "[i]t is not inconceivable that a jury could find that

Plaintiff was abused for reasons other than" for being a member of a protected class.  (ECF No. 37, at 13).

Defendants' preemption argument is misguided.  In Maryland, a plaintiff may not maintain a negligent supervision and retention claim when the underlying conduct is not actionable under Maryland common law.  *See Bryant v. Better Bus. Bureau of Greater Md.*, 923 F.Supp. 720, 751 (D.Md. 1996) (citation omitted).  Maryland courts repeatedly have held that "Title VII may not form the predicate for claims of negligent retention and supervision" because there is no Maryland common law cause of action for employment discrimination.  *See Demby v. Preston Trucking Co., Inc.*, 961 F.Supp. 873, 881-82 (D.Md. 1997) (citations omitted).  Despite this general rule, the Court of Appeals has held that a negligent retention and supervision claim is not preempted when the underlying conduct is based, at least partially, on an independent common law cause of action such as assault and battery.  *Ruffin Hotel Corp. of Md. v. Gasper*, 418 Md. 594, 615-18 (2011); *see also Robinson v. DarCars of New Carrollton, Inc.*, No. DKC-11-2569, 2012 WL 993405, at *5 (D.Md. March 22, 2012) ("Thus, for example, where a negligence claim is based on common law assault or battery, Title VII does not preempt the negligence claim.").  The analysis in *Ruffin* is directly applicable here.  Although Plaintiff alleges causes of action under antidiscrimination statutes, she also asserts

common law torts of assault and battery. Accordingly, Plaintiff's negligent supervision and retention claims are not preempted.

Defendants also argue that they cannot be held vicariously liable for Ms. Hosseini's tortious conduct. The merits of this argument will be discussed in relation to Plaintiff's intentional tort claims, but it is not relevant for Plaintiff's negligent supervision and retention claims. Such claims do not allege that Defendants are vicariously liable for the tortious acts of an employee, but rather that Defendants were directly negligent in some way. *See, e.g., Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 792 F.3d 520, 530-31 (4th Cir. 2015) (distinguishing "allegations of a principal's vicarious liability for its agent's intentional torts" from "assertions that the principal was liable for the agent's intentional act due to its negligent failure to supervise"). Accordingly, Defendants' motion for summary judgment will be denied as to Counts V and VI.

### 3. Intentional Torts: Assault, Battery, and Intentional Infliction of Emotional Distress (Counts VII, VIII, and IX)

Plaintiff asserts that Defendants should be held vicariously liable for the intentional torts allegedly committed by Ms. Hosseini. Defendants argue that they cannot be held vicariously liable for Ms. Hosseini's intentional torts because

she was acting outside the scope of her employment.[7]  "'An employer is vicariously liable for the torts of its employee when the employee committed the tort within the scope of [her] employment.'"  *Perry v. FTData, Inc.*, 198 F.Supp.2d 699, 708 (D.Md. 2002) (quoting *Lee v. Pfeifer*, 916 F.Supp. 501, 508 (D.Md. 1996) (citing *Sawyer v. Humphries*, 322 Md. 247 (1991))). "'To be within the scope of the employment the conduct must be of the kind the [employee] is employed to perform.'"  *Hare v. Opryland Hospitality, LLC*, No. DKC-09-0599, 2010 WL 3719915, at *13 (D.Md. Sep. 17, 2010) (quoting *E. Coast Freight Lines v. Mayor of Baltimore*, 190 Md. 256, 285 (1948)).

Plaintiff's bald assertions that Ms. Hosseini was acting "within the scope of the agency and/or employment relationship between her and Defendants" are not enough to establish vicarious liability.  There is no question that Ms. Hosseini's alleged intentional torts were not committed in furtherance of Defendants' salon business.  There is also no evidence that Defendants authorized Ms. Hosseini's alleged tortious actions. In her opposition to Defendants' motion, Plaintiff argues only that "[t]he persistence of [Ms.] Hosseini's abusive conduct and the [D]efendants' failure and refusal to act is evidence that

---

[7] Defendants also argue that various statutes preempt Plaintiff's intentional tort claims.  It is not necessary to reach this question because Defendants cannot be held vicariously liable for Ms. Hosseini's actions.

the [D]efendants did not view it as a departure from their rules and norms of workplace behavior." (ECF No. 37, at 14). This vague accusation, unsupported by the record or case law, is not sufficient to impute liability to Defendants for Ms. Hosseini's alleged tortious conduct. *See Jones v. Family Health Centers of Baltimore, Inc.*, ---F.Supp.3d---, 2015 WL 5719461, at *6 (D.Md. Sep. 28, 2015) ("There is no evidence in the summary judgment record that [the allegedly tortious] acts furthered [the defendant's] business interests or were otherwise authorized by the organization. Plaintiff's vicarious liability theory must therefore fail."). Accordingly, Defendants' motion for summary judgment will be granted as to Counts VII, VIII, and IX.

**4. Aiding and Abetting (Count X)**

Plaintiff alleges that Defendants "assisted" Ms. Hosseini in committing her intentional torts against Plaintiff. (ECF No. 1 ¶¶ 76-81). Maryland law recognizes aider and abettor civil liability for those who "actively participate . . . in the commission of a tort." *Alleco Inc. v. Harry & Jeannette Weinberg Found.*, 340 Md. 176, 200 (1995). "To establish a claim for aiding and abetting, [a] plaintiff must establish '1) there is a violation of the law by the principal; 2) defendant knew about the violation; and 3) defendant gave *substantial* assistance or encouragement to the principal to engage in tortious conduct.'" *Christian v. Minn. Min. & Mfg. Co.*, 126

F.Supp.2d 951, 960 (D.Md. 2001) (emphasis added) (quoting *Alleco*, 340 Md. at 186). Assuming *arguendo* that Ms. Hosseini committed the underlying intentional torts, the record is devoid of evidence that Defendants assisted or encouraged such conduct, let alone *substantially* assisted or encouraged. Accordingly, Defendants' motion for summary judgment will be granted as to Count X.

### D. Wage Claims (Counts XI and XII)

Plaintiff alleges that she was not paid the minimum wage in violation of the FLSA, the MWHL, and the MWPCL. (ECF No. 1 ¶¶ 82-96). The MWHL is not applicable to Plaintiff's employment because she was paid on a commission basis. (ECF Nos. 31-2, at 4; 31-3, at 5); *see Randolph v. ADT Sec. Servs., Inc.*, 701 F.Supp.2d 740, 748 (D.Md. 2010) (citing Md. Code, Lab. & Empl. § 3-403(5)). Defendants' argument that the MWPCL does not apply to minimum wage claims such as Plaintiff's is incorrect. The MWPCL provides that employers "shall pay each employee at least once in every 2 weeks or twice in each month." Md.Code Ann., Lab. & Empl. § 3-502(a)(1)(ii). The Court of Appeals reiterated the reach of an MWPCL claim in *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 646 (2014):

> Maryland has two wage enforcement laws . . . the [M]WHL and the [M]WPCL. The [M]WHL aims to protect Maryland workers by providing a minimum wage standard. The [M]WPCL requires an employer to pay its employees regularly

> while employed, and in full at the
> termination of employment. Read together,
> these statutes allow employees to recover
> unlawfully withheld wages from their
> employer, and provide an employee two
> avenues to do so.

*See also Marshall v. Safeway*, 437 Md. 542, 561-62 (2014)
(holding that the MWPCL generally provides an employee a cause
of action against an employer, not just for the failure to pay
wages on time, but also for "the refusal of employers to pay
wages lawfully due"). The MWPCL does not have an exception for
workers paid on commission. *See Hausfeld v. Love Funding Corp.*,
---F.Supp.3d---, 2015 WL 5521789, at *8 (D.Md. Sept. 17, 2015)
("Commissions are wages for the purposes of the MWPCL" (citing
Md. Code, Lab. & Empl. § 3-501(c)(2)(ii))). Accordingly, the
MWPCL applies to Plaintiff's employment.[8]

The FLSA requires that employees be paid a minimum wage of
$7.25 per hour. 29 U.S.C. § 206 (a)(1). In order to establish
a minimum wage violation, Plaintiff must show that she did not
receive compensation equal to or exceeding the product of the
total number of hours worked and the statutory minimum hourly

---

[8] Defendants note that Plaintiff may not recover under both
the FLSA and MWPCL. (ECF NO. 31-1, at 42). Although this is
correct, Plaintiff may, at this stage, assert liability under
both statutes. The MWPCL provides that "each employer shall pay
an employee . . . all wages due for work that the employee
performed before the termination of employment, on or before the
day on which the employee would have been paid the wages if the
employment had not been terminated." Md.Code Ann., Lab. & Empl.
§ 3-505(a). Ultimately, because Plaintiff cannot establish a
claim for wages owed under the FLSA, she has no MWPCL claim.

rate during a given week. *See Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969). "[I]n order to meet the requirements of the FLSA's minimum wage provisions, an employee compensated wholly or in part on a commission basis must be paid an amount not less than the statutory minimum wage for all hours worked in each workweek without regard to [her] . . . productivity." *Rogers v. Savings First Mortgage, LLC*, 362 F.Supp.2d 624, 631 (D.Md. 2005) (citation and internal quotation marks omitted).

Defendants contend that Plaintiff was paid well above the minimum wage for the hours she worked. (ECF No. 31-14). They assert that Plaintiff worked between .75 and 24.25 hours per two-week pay period. (*Id.*). Defendants calculate this time based on the services Plaintiff performed and for which she was paid commission. (*See* ECF Nos. 31-10 through 31-14). Plaintiff counters that she generally worked five or six days a week, starting around 10:00 am and leaving between 4:00 and 7:30 pm. (ECF Nos. 31-3, at 3; 37-1 ¶ 27). Plaintiff asserts that, in addition to servicing clients, she would assist other employees, receive job-related training, and attend to walk-in customers. (ECF No. 37-1 ¶ 27). In his deposition, Mr. Cohen stated that Plaintiff worked two to three days per week, averaging approximately eleven to thirteen hours per week. (ECF No. 37-2, at 15). When asked if Plaintiff came in when she was not

scheduled to work, Mr. Cohen said "[t]hat is what she does." (*Id.* at 19). He said that Plaintiff sometimes came in, despite not being scheduled, and performed services, perhaps because the customers were Plaintiff's friends. (*Id.*). A salon employee responsible for booking clients testified that "[i]f [Plaintiff] did not have clients, she was not in the salon." (ECF No. 31-7, at 4).

A plaintiff has the burden of establishing the hours [she] claims to have worked and the work [she] claims to have performed for which [she] was not paid." *McLaughlin v. Murphy*, 436 F.Supp.2d 732, 737 (D.Md. 2005) (analyzing an FLSA overtime and minimum wage claim), *aff'd per curiam*, 247 F.App'x 430 (4ᵗʰ Cir. 2007); *Marshall v. Gerwill, Inc.*, 495 F.Supp. 744, 749 (D.Md. 1980) (citations omitted) (analyzing an FLSA minimum wage claim where taxi drivers asserted that they worked more hours than for which they were compensated). Here, Plaintiff alleges that Defendants' time records are inadequate and incomplete because they account only for the time Plaintiff was servicing clients, and not for other time she spent in the salon. (*See* ECF No. 37, at 21). To meet her burden in light of such allegedly incomplete records, Plaintiff need not give exact evidence of the hours she worked, but must present sufficient evidence to create a "just and reasonable inference" as to the amount and extent of the work performed beyond what is included

in the records. *McLaughlin*, 436 F.Supp.2d at 737-38; *see Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108-09 (4th Cir. 1988). The burden then shifts to the defendant to "negate the inference" established by Plaintiff. *McLaughlin*, 436 F.Supp.2d at 737. "'If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate.'" *Id.* at 738 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)).

Here, Plaintiff has not met her burden of establishing a reasonable inference that she was not compensated the minimum wage for hours worked. The only evidence she has provided is testimony of general estimates of hours worked and a printout of a calendar from June 18, 2013. (ECF No. 37-1, at 16). Plaintiff's declarations that she worked nearly full-time and the calendar of scheduled services for one day do not establish a reasonable inference that she was not paid the minimum wage for work performed. Rough estimates of hours worked in a week are not sufficient. *McLaughlin*, 436 F.Supp.2d at 738 (noting that an "imprecise estimate that amounts to a 40-hour work-week" was not sufficient to satisfy a plaintiff's burden); *see also Lee v. Vance Exec. Prot., Inc.*, 7 F.App'x 160, 166 (4th Cir. 2001) (holding that "general testimony about" work performed did not meet the plaintiffs' burden because "the record [was] bereft of evidence showing the amount or extent of [the] extra work"

performed)[9]; *Sizemore v. Affordable Battery, Inc.*, 49 F.Supp.3d 1138, 1143 (S.D.Fla. 2014) (granting summary judgment to the defendants because "Plaintiffs offer[ed] mere bare statements of the most general nature and no evidence of Defendants' failure to pay minimum wage and overtime compensation as required by the FLSA"); *Deloatch v. Harris Teeter, Inc.*, 797 F.Supp.2d 48, 57 (D.D.C. 2011) (granting summary judgment to the defendant because the plaintiff provided "only minimal details" regarding alleged unpaid shifts, which was "hardly sufficient grounds upon which a reasonable juror could infer the amount and extent of uncompensated work allegedly performed by the plaintiff" (citing *Lee*, 7 F.App'x at 166)).  Furthermore, the record indicates that Plaintiff was paid substantially more than the minimum wage for the hours during which client services were performed. Plaintiff's lowest hourly rate for a pay period was $14.55, approximately double the minimum wage.  (ECF No. 31-14, at 4). The calendar Plaintiff puts forth as evidence shows that she was scheduled to perform 2.25 hours of services on one day.  (ECF No. 37-1, at 16).  Plaintiff argues that this supports her wage claims because Defendants contend that she did not work on June 18.  In order to survive summary judgment, however, Plaintiff

---

[9] Although these cases generally address the application of the FLSA's overtime provisions, the analysis is informative to Plaintiff's minimum wage claim.  As in the overtime cases, the key question here is the number of hours Plaintiff worked.  *See Marshall*, 495 F.Supp. at 749.

would need to establish a reasonable inference that she worked approximately twice as many hours as Defendants' allegedly incomplete records show, a burden she falls significantly short of meeting. *Cf.* *Avery v. Chariots for Hire*, 748 F.Supp.2d 492, 501 (D.Md. 2010) (noting that "[t]he FLSA does not guarantee that employees are paid for every hour of work and does not allow for employees to recover more than the statutory minimum wage" (citing *Blankenship*, 415 F.2d at 1198)).

Moreover, even if Plaintiff were able to meet her initial burden, Defendants have put forth evidence in the form of work schedules, receipts of services performed, an affidavit signed under the penalty of perjury, and deposition testimony of an employee responsible for booking clients that negates any reasonable inference Plaintiff may have established. (ECF Nos. 31-7, at 4; 31-10 through 31-14). Accordingly, Defendants' motion for summary judgment will be granted as to Counts XI and XII.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendants will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge